## MERILLAT v. BUSSEY.

### APPEALS; ESTOPPEL; EQUITY.

1. Where the parties to an appeal in an irregular proceeding, which in effect was an arbitration, joined in asking a final decree on appeal to save expense and further litigation, and all the parties interested were represented on the hearing of the appeal, although the record failed to show that some of them had appeared below, the court considered and determined the appeal, on the ground that all of the parties, having appeared in this court, would be estopped to question this decree.

2. *Merillat* v. *Hensey*, ante, 398, referred to.

3. Where a decree, after establishing a debt due the complainants as trustees against certain defendants, substituted the complainants to all of the interests which such defendants had in certain land owned by a syndicate of which the defendants were members, it was *held* that, in a subsequent accounting involving the syndicate's affairs, the trustees stood in the shoes of such defendants, and had no greater rights than such defendants had as of the date of the decree, but it was also *held* that the trustees were not chargeable with any part of an attorney's fee allowed for representing the members of the syndicate, as they represented such defendants, whose interests conflicted with the other syndicate members.

No. 2051.   Submitted February 3, 1910.   Decided March 11, 1910.

HEARING on an appeal from a decree of the Supreme Court of the District of Columbia confirming the report of the auditor in a proceeding to enforce a former decree of the Court and to

establish a certain interest in the proceeds of the sale of real estate.                                              *Reversed.*

The facts are stated in the opinion.

The appellants, *Mr. C. H. Merillat* and *Mr. Mason N. Richardson,* appeared in proper person.

*Mr. Simon Lyon* and *Mr. J. J. Darlington* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an appeal by Charles H. Merillat and Mason N. Richardson, Trustees, from a decree confirming the auditor's report in a proceeding to enforce a decree of the supreme court of the District. July 18th, 1903, a bill (No. 24,084) was filed by C. W. Richardson and others against Thomas G. Hensey, Mellen C. Hooker, and Melville D. Hensey, alleging frauds committed by the defendants in the purchase of certain lands in which all were interested as members of what is called the Le Droit Park Syndicate. It was alleged that out of the money realized by defendants, as trustees for themselves and complainants, certain other lands were purchased, and the bill sought to declare a trust in said lands, to the extent of the equitable interests of the defendants therein, and also to recover profits made in the transactions. Certain lands were described therein, which are not involved in this proceeding. By amendment filed April 27th, 1904, plaintiffs brought into the litigation the equitable interests of defendants in lots 11–12 and 13 in Block 12 of Le Droit Park, the legal title to which was in the name of Thomas G. Hensey and Cyrus Bussey, as trustees of an association known as the "Ten Syndicate." A decree was rendered in said cause on May 28th, 1906, which, among other things, established an indebtedness of the defendants in the sum of $53,819.17. It also declared

a trust in favor of complainants in certain lands described therein, and the last paragraph was:

"That unless the money decree of $53,819.17, herein before directed to be made satisfied on or before June 20th, 1906, Thomas G. Hensey, Mellen C. Hooker, and Melville D. Hensey be and they are hereby decreed, to have made all their payments subsequent to the 19th of January, 1893, on account of their interests in what is described in these proceedings as the Norwood Real Estate Company, the District Investment Company, and the Ten Syndicate, with the moneys of the Le Droit Park Syndicate, and Charles H. Merillat, and Edward H. Thomas, as trustees for said Le Droit Park Syndicate, are authorized and directed to take such steps as may be necessary to reduce to possession such interests of said defendants in the said land companies and syndicate aforesaid, and to hold the same for the Le Droit Park Syndicate, said trustees to succeed to all rights, and interests of said Thomas G. Hensey, Mellen C. Hooker, and Melville D. Hensey in the said land companies or syndicate aforesaid, as of date August 24th, 1903."

Thomas subsequently resigned as trustee, and appellant Richardson was substituted for him.

It seems that shortly after said decree complainants filed a bill, No. 26,121, to enjoin the transfer by said Hensey, Hooker, and Hensey of their interest in the Ten Syndicate.

This bill was dismissed by the complainants after a stipulation entered into with Bussey and Thomas G. Hensey as follows:

It is this the 5th day of April A. D. 1906, stipulated and agreed between counsel for complainants in equity cause 26,121 and Thomas G. Hensey and Cyrus Bussey, trustees for shareholders in what is known as the Ten Syndicate.

First. The complainants agree to the passage of the title by the Columbia Title Company, released from the operation of the equity cause aforesaid and from any cloud of title arising therefrom.

Second. The said trustees agree to deposit with the Colum-

bia Title Company the proceeds of the land and the notes for the unpaid purchase money.

Third.   The complainant agrees upon satisfactory proof of the interest in said proceeds of any shareholders, or their heirs or representatives, not involved in equity causes 26,121 or 24,084; that such shareholders may receive the amounts properly due them, or same shall be held until final determination of equity cause 26,121 or 24,084.

Fourth.   That the interests of Thomas G. Hensey, Melville D. Hensey, and Mellen C. Hooker in the Ten Syndicate, whether the same be direct or indirect, shall be retained by the Columbia Title Company until after determination of equity cause 24,084 and 26,121.

(Signed)    Chas. H. Merillat,
Attorney for Complainants.
Cyrus Bussey,
Thomas G. Hensey,
Trustees in trust.

On May 3d, 1907, Cyrus Bussey, the appellee, filed an intervening petition in case No. 24,084, in which he recites the stipulation aforesaid, alleging that the purchase money for the remaining lands of the Ten Syndicate, under contract of sale, was in the possession of the Title Company; that Thomas G. Hensey had died, and petitioner was surviving trustee; that said fund ought to be distributed under order of the court in the interest of all concerned, and that the same should be referred to the auditor for a statement of account.   Pursuant to this petition, reference was made to the auditor on May 3d, 1907.   The auditor's report shows the following facts, which are undisputed:   On August 24th, 1896, Cyrus Bussey and nine other persons, among whom were Thomas G. and Melville D. Hensey, purchased the lots heretofore described for the sum of $17,500; $5,000 were paid in cash; $2,750 were to be paid in six months, and $9,750 in one, two, and three years, for which notes were given by the trustees hereinafter mentioned.   Mellen C. Hooker purchased the interest of one of

the original members on April 20, 1892. The lots were conveyed to Thomas G. Hensey and Cyrus Bussey as joint tenants, in trust for the benefit of the contributing members of the syndicate, who were not named in the conveyance. Certificates were issued to the syndicate members, reciting their several interests, amounting to one tenth each. In April, 1896, the encumbrances amounted to $8,000. Between that time and April, 1900, Rhode Island avenue was extended through the property; the greater portion of which was taken therefor. The award for compensation was $18,704, and benefits were assessed of about $2,700. The latter was litigated for a time, but has since been settled. Out of the condemnation fund the encumbrances upon the property were also discharged. Some of the surplus was distributed, in what manner does not appear, but apparently *pro rata.*

The auditor also found, and the finding is sustained by the evidence, that, of the moneys in hand, loans of $500 each were made by the trustees to Thomas G. Hensey, Melville D. Hensey, Mellen C. Hooker, and W. H. Hills on April 24th, 1904. In October, 1904, $400 additional were loaned to Thomas G. Hensey and $322 to Melville D. Hensey. Subsequently a contract of sale was made for the remaining land, which was not closed by reason of the injunction heretofore referred to. The stipulation contemplated that this sale should be completed and the purchase money held by the title company to await the determination of the rights of the parties. The amount of this purchase was $5,380.11. The settlement reported by the auditor in the distribution of this fund, less, costs, expenses, and attorneys' fee of $500, showed that Mellen C. Hooker's share of the fund was $73.88. None was awarded to either of the Henseys. The remaining members of the syndicate, save Hills, were awarded $778.72 each. Exceptions were filed to this report by the appellants, and were overruled. The decree confirmed the report.

The proceeding is an irregular one. Cause No. 24,084 had been terminated by final decree, and was open in so far only as control of the trustees was concerned.

The injunction bill in No. 26,121 having been dismissed, the cause proceeded upon the assumption that the intervener's petition, together with the stipulation, brought all of the parties into court for the settlement of the affairs of the Ten Syndicate. It does not appear that any parties were cited to answer the petition, nor does the record show the appearance of any party thereto but Bussey and the appellants. It was said on the argument that each syndicate member made appearance before the auditor, and they were all represented on the hearing in this court.

No · objection has been raised to the character of the proceeding, which amounts rather to an arbitration, and all parties join in asking a final decree to save expense and further litigation. Upon the assumption that all parties, having appeared, will be estopped to question the decree, we will consider the case as regularly before us. See *French* v. *Gapen,* 105 U. S. 509–525, 26 L. ed. 951–957.

As heretofore decided in *Merillat* v. *Hensey,* ante, 398, the amended bill in No. 24,084, filed on April 27th, 1904, bound the equitable interest of the Henseys and Hooker in the lands described therein, from and after that date. As also held in that case, while the decree in No. 24,084 is irregular, it was rendered by a court having jurisdiction of the subject-matter and the parties, and is not subject to attack for error.

The exceptions of appellants relate to many matters of payments, etc., on account of the Ten Syndicate, made prior to April 27th, 1904, and also raise the question of certain expenditures and allowances made to one of the members, Le Fevre, on account of services, etc., in procuring the condemnation act. They also seek to charge the trustee Bussey with liability for such payments, and others for the loans made to members of the syndicate.

We perceive no ground upon which we can entertain these exceptions. The effect of the final decree was to substitute the appellants to all the interests which the Henseys and Hooker had in the property of the Ten Syndicate on April 27th, 1904. They stand in the shoes of said parties, and all that

they can claim in this proceeding is such interests as said parties actually had on said date. Grant that the trustees and syndicate members improperly paid the charges of Le Fevre, and that there was no authority for the loans made by the trustees of the funds to syndicate members. All of the members seem to have acquiesced. The Henseys and Hooker not only acquiesced, but received loans themselves. They were estopped to deny the validity of these transactions, and appellants, who succeeded to their rights thereafter, have no greater right than they had.

If, however, the trustees had the power to lend the funds to members, any loan or distribution to the Henseys or Hooker, after April 27th, 1904, was at their peril. The interests of these parties, whatever they were, passed to the appellants by virtue of the decree of that date in cause No. 24,084.

All that is left of the property of the Ten Syndicate consists of the fund in the possession of the Title Company, and the uncollected loans. It remains to consider what part of the fund is payable to the appellants as holders of the interests of the Henseys and Hooker on April 27, 1904. The entire fund, less the expenses of the reference, amounts to the sum of $5,205.11. The auditor further deducted the sum of $500 as attorney's fees allowed Bussey. We find no order of the court allowing this fee, and while it might properly be allowed to Bussey for representing the interests of himself and other syndicate members, we see no ground for charging any part of it against the interests of the Henseys and Hooker, who were represented by appellants, and whose interests are in conflict with the others.

Adding to this sum the amount of the loans made to the syndicate members,—namely, to Thomas G. Hensey, $900; to Melville D. Hensey, $822; to Hooker, $500; and to Hills, $500,—there would remain for distribution, so far as the record shows, $7,927.11. Of this sum each one of the ten owners would be entitled to $792.71. As each of the Henseys and Hooker received $500 of the fund before April 27th, 1904, the same are to be deducted from the part otherwise payable

to them. This would leave a balance due each on April 27th, 1904, of $292.11. To these several sums appellants are entitled as having succeeded to their interests as of that date by virtue of the decree of May 24th, 1906, in cause No. 24,084. The decree will be reversed, with costs, and the cause remanded, with directions to enter a decree awarding payment of the several amounts of the fund to appellants.

*Reversed.*

Mr. Justice Gould of the Supreme Court of the District of Columbia sat with the court in the hearing and determination of this case in the place of Mr. Justice Van Orsdel.